UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

LUZETTE M. R.,[1]

Plaintiff,

v.

ANDREW M. SAUL, Commissioner of Social Security,

Defendant.

Case No. CV 19-07340-RAO

**MEMORANDUM OPINION AND ORDER**

## I. INTRODUCTION

Plaintiff Luzette M. R. ("Plaintiff") challenges the Commissioner's denial of her application for a period of disability and disability insurance benefits ("DIB"). For the reasons stated below, the decision of the Commissioner is AFFIRMED.

## II. PROCEEDINGS BELOW

On or about November 18, 2015, Plaintiff filed a Title II application for DIB alleging disability beginning March 11, 2014. (Administrative Record ("AR") 171-72.) Her application was initially denied on April 27, 2016. (AR 93-97.) Plaintiff

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

filed a written request for a hearing, and a hearing was held on June 25, 2018. (AR 41-80, 101-02.) Represented by counsel, Plaintiff appeared and testified, along with an impartial vocational expert. (AR 41-80.) On August 31, 2018, the Administrative Law Judge ("ALJ") found that Plaintiff had not been under a disability, pursuant to the Social Security Act, prior to August 11, 2017, but became disabled on that date and has continued to be disabled through the date of the decision. (AR 27.) The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (AR 1-3.) Plaintiff filed this action on August 23, 2019. (Dkt. No. 1.)

The ALJ followed a five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act. *See Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995). At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 11, 2014, the alleged onset date ("AOD"). (AR 18.) At **step two**, the ALJ found that since the AOD Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, bilateral carpal tunnel syndrome, and rheumatoid arthritis in the wrists. (AR 19.) The ALJ also found that since August 11, 2017, in addition to the severe impairments identified above, Plaintiff has had rheumatoid arthritis in the shoulders, ankles, and toes. (*Id.*) At **step three**, the ALJ found that Plaintiff "has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." (AR 20.)

Before proceeding to step four, the ALJ found that prior to August 11, 2017, Plaintiff had the residual functional capacity ("RFC") to "perform light work . . . except occasional performance of postural activities, frequent handling and fingering with the dominant right hand, occasional handling and fingering with the non-dominant left hand, and avoidance of concentrated exposure to extreme cold, dangerous moving machinery, and unprotected heights." (AR 20.)

///

Additionally, the ALJ found that beginning on August 11, 2017, Plaintiff had the RFC to "perform sedentary work . . . except occasional performance of postural activities, occasional handling and fingering with the dominant right hand, occasional handling and fingering with the non-dominant left hand, and avoidance of concentrated exposure to extreme cold, dangerous moving machinery, and unprotected heights." (AR 24.)

At **step four**, the ALJ found that, prior to August 11, 2017, Plaintiff was capable of performing past relevant work as a master scheduler and as a material analyst. (AR 25.) The ALJ also found that beginning on August 11, 2017, Plaintiff has been unable to perform past relevant work. At **step five**, the ALJ found that since August 11, 2017, there are no jobs that claimant could perform. (AR 26.)

Accordingly, the ALJ determined that, as to Plaintiff's claim for period of disability and DIB, Plaintiff had not been under a disability prior to August 11, 2017. (AR 27.)

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001). "Substantial evidence . . . is 'more than a mere scintilla[,]' . . . [which] means--and means only--'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, —U.S. —, 139 S. Ct. 1148, 1154, 203 L. Ed. 2d 504 (2019) (citations omitted); *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

///

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)); *see Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). The Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

## IV. DISCUSSION

Plaintiff raises two issues for review: (1) whether the ALJ erred in assessing Plaintiff's RFC; and (2) whether the ALJ erred in evaluating Plaintiff's credibility and subjective symptoms. (*See* Joint Stipulation ("JS") 4.)[2] For the reasons below, the Court affirms.

### A. The ALJ Did Not Err in Evaluating Plaintiff's Credibility and Subjective Symptom Testimony[3]

Plaintiff contends that "[t]here is no evidence of malingering and the ALJ failed to provide specific, clear or convincing reasons for rejecting the Plaintiff's subjective complaints." (JS 10; *See* JS 9-12, 16.) The Commissioner disagrees. (*See* JS 12-

---

[2] For ease of reference, the Court uses the page numbers automatically generated by the Court's electronic filing system in citing to the Joint Stipulation.

[3] Because subjective symptom testimony is one factor that the ALJ must consider when assessing a claimant's RFC, the Court addresses the issue of credibility first before discussing the overall RFC determination.

16.)

**1. Plaintiff's July 6, 2018 Testimony**

Plaintiff has a Bachelor of Science in Criminal Justice Administration. (AR 51.) Plaintiff previously worked as a material analyst and as a planner. (AR 45-47.) She explained that after a divisional lay off, she planned to go back to work, but had surgery on her right hand to address inflammation. (AR 50.) After the surgery Plaintiff's rheumatoid arthritis flared up and she underwent therapy "for a long time." (AR 51.) Plaintiff reported wearing a splint on her hand and arm, and being unable to move her wrist. (*Id.*)

Plaintiff explained that she developed arthritis in her left hand and was unable to work. (AR 50.) She also had carpal tunnel and received shots to help. (AR 51-52.) She then developed arthritis in her wrist and fingers. (AR 52.) She described experiencing pain and her wrists as being unbendable. (*Id.*) Plaintiff reported that both of her hands are in a similar state, but she has not had surgery on her left hand. (AR 52-53.) She underwent therapy in her right hand, but not for her left hand. (AR 53.) Plaintiff explained that therapy would not help with rheumatoid arthritis. (*Id.*)

Plaintiff reported that she last worked for an orthodontist. (AR 49.) Plaintiff explained that after five or six weeks, she could not work anymore. (*Id.*) She reported that the job required "a lot of sitting, standing, and waiting for the doctor to get through with a patient, computer work, and . . . [she] had to talk to patients," and she got to the point where she was in pain. (*Id.*) Plaintiff's back would hurt from sitting and her feet would swell all the time. (AR 49-50.) During this time, Plaintiff was diagnosed with rheumatoid arthritis in her feet. (*Id.*) Because of the pain, Plaintiff found it difficult to speak with people all day. (AR 50.) When she was doing computer work, her hands would freeze up and her wrists would not move. (AR 65.) She also reported feeling pain in her wrist, joints, and fingers. (AR 65-66.)

Plaintiff explained that she is prevented from working due to multiple impairments, including rheumatoid arthritis in her shoulders, hands, and feet. (AR

54.) It is hard for Plaintiff to raise her arms over her head, or stretch. (*Id.*) The rheumatoid arthritis in her feet worsened, making it difficult to walk. (*Id.*) She reported having stiff and sore ankles, toes, and feet. (*Id.*) Plaintiff testified that sitting for long periods of time and typing for long periods of time cause pain, soreness, and stiffness in her wrists and hands. (AR 54-55.) Plaintiff explained that her condition has progressed, and she has been prescribed medication. (AR 55.) The medication prevents flare ups, but her knuckles are still stiff. (*Id.*) Additionally, because of her lower back, she is unable to sit for long periods of time. (AR 54.)

Plaintiff reported that her arthritis has been progressing since 2015. (AR 56.) Her doctors have prescribed different medications, but she reported being unable to take most of them because arthritis medications are very strong and harsh on her body. (*Id.*) Plaintiff explained that she was not interested in more aggressive medication because of the side effects she experiences. (AR 69.) The medications affect her liver. (*Id.*)

She explained that her right hand is "worse" since the surgery and she cannot "really use" her right hand. (AR 60.) After the surgery, her arthritis started spreading from her wrist into her hands. (AR 61.) Plaintiff's right-hand arthritis became worse to the point where her "right hand kind of became . . . useless to [her] as far as . . . being able to do work things." (*Id.*) For example, she is unable to use a computer for long periods of time or focus without pain. (*Id.*)

As to her left hand, Plaintiff reported being diagnosed with carpal tunnel and experiencing numbness. (AR 62.) Plaintiff was provided with "a shot in the nerve to sooth the carpal tunnel." (*Id.*) Plaintiff reported that since the shot it has been "pretty good" and her hand does not go numb, but she does experience pain. (AR 62-63.)

Plaintiff also reported arthritis in her knees. (AR 66.) She explained that she has back and foot pain. (*Id.*) Plaintiff received physical therapy for some time, but stopped because she could not afford the co-insurance. (AR 66-67.)

///

Plaintiff reported being unable to make a fist, grab and hold things, and cut things. (AR 55.) Plaintiff's husband cuts her steak and washes the dishes. (*Id.*) When Plaintiff washes dishes, she wears rubber gloves to help with her grip. (*Id.*) Plaintiff explained that she has difficulty opening doors. (AR 63.) She also cannot exercise or take her dog on a walk because of the issues with her feet. (*Id.*) Plaintiff does not do housework. (*Id.*) She can do light dusting, but cannot use a vacuum because the back and forth movement strains her back. (*Id.*)

Plaintiff explained that she does not got to department stores and goes to the grocery store infrequently. (AR 64.) Plaintiff has also had to stop bowling. (*Id.*) She is unable to sew or do needlework. (AR 64-65.)

**2. Plaintiff's Exertion Questionnaire[4]**

Plaintiff lives in a house with her spouse. (AR 227.) She can climb one flight of stairs with no negative affect. (AR 228.) She can lift anything under five pounds "a few times per day." (*Id.*) She is able to do her own grocery shopping once per week. (*Id.*) She does not clean her own home or living area. (*Id.*) Plaintiff can drive an automatic car for twenty miles. (*Id.*) Plaintiff experiences pain and cramps in her hands and lower back pain and stiffness when she drives more than twenty miles. (*Id.*) She does not work on cars or do yard work. (*Id.*) Plaintiff used to do pruning, trimming, and planting, but is no longer able to because of pain and stiffness in her hands and back. (*Id.*) Plaintiff reported that she did chores before she became disabled. (AR 229.) Plaintiff expressed experiencing difficulty finishing her housework and chores. (*Id.*)

Plaintiff sleeps between five and six hours. (AR 229.) She rests multiple times during the day for ten or fifteen minutes to relieve her back pain. (*Id.*) She reported

[4] Plaintiff's questionnaire is undated and unsigned. (*See* AR 227-29.) Additionally, Plaintiff references an attachment, but there is no attachment to the questionnaire in the record. (*See id.*)

taking two aspirin twice per day. (*Id.*)

**3. Applicable Legal Standards**

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of symptoms, the ALJ engages in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (citing *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Lingenfelter*, 504 F.3d at 1036) (internal quotation marks omitted). If so, and if the ALJ does not find evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony regarding the severity of his symptoms. *Id*. The ALJ must identify what testimony was found not credible and explain what evidence undermines that testimony. *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). "General findings are insufficient." *Lester*, 81 F.3d at 834.

**4. Discussion**

"After careful consideration of the evidence," the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but found that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully supported prior to August 11, 2017." (AR 22.)

The Commissioner notes that the "primary reason the ALJ did not credit Plaintiff's statements is that the ALJ found inconsistencies with Plaintiff's allegations and the medical record." (JS 12.) The Commissioner argues that the ALJ also "noted inconsistencies in Plaintiff's pain complaints, inconsistencies with regard to Plaintiff's allegations of when she stopped work, and inconsistencies with regard to Plaintiff's activities." (JS 12-13.) While the ALJ did summarize Plaintiff's

testimony regarding her daily activities and discussed Plaintiff's previous employment extensively during the hearing, the ALJ did not articulate these as reasons for discounting Plaintiff's testimony, and the Court cannot affirm on a ground on which the ALJ did not rely. *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking.").

The Court's review of the record reveals that, in discounting Plaintiff's testimony, the ALJ relied on (1) inconsistencies between Plaintiff's statements and the objective medical evidence; and (2) the lack of supporting objective medical evidence. (AR 21-24.) No malingering allegation was made, and therefore, the ALJ's reasons must be "clear and convincing."

*a. Reason No. 1: Inconsistencies Between Plaintiff's Statements and the Objective Medical Evidence*

The ALJ found that Plaintiff's statements about the alleged intensity, persistence, and limiting effects of symptoms were inconsistent with the objective medical evidence prior to August 11, 2017. (AR 21; *see* AR 21-22.) Specifically, as to Plaintiff's claims that pain and stiffness in her lower back affected her ability to sit or stand, or drive for more than 20 minutes, the ALJ found that the degenerative disc disease of the lumbar spine "does not support the limitations to the extent alleged." (AR 21). The ALJ reasoned that while Plaintiff had a "positive straight leg raise on her right leg, loss to pinprick sensation at L5 bilaterally, and weakness to dorsiflexion of the great to bilaterally, her gait remained intact and she was capable of standing on [her] toes and walking on [her] heels without difficulty." (*Id.*, citing AR 338, 376-77, 411.) However, contrary to the ALJ's summary, the Court's review

of the records shows that Plaintiff was able to walk on her heels *with* difficulty.[5] (*See* AR 376-77.) Additionally, the ALJ pointed to documented improvement of range of motion, strength, and flexibility. (AR 21.)

As to Plaintiff's claims that she was unable to make a fist, grab objects, or maintain a grasp on objects because of bilateral hand and wrist pain, the ALJ found that after Plaintiff's right wrist extensor tenosynovitis in March 2014, the record shows Plaintiff experienced "marked improvement." (AR 21.) In support the ALJ cites to a July 2014 treatment note where Plaintiff complained of right wrist pain, but her physician documented that Plaintiff's wrist showed "marked improvement" and Plaintiff reported it was "a little better." (AR 273.) The ALJ also notes that despite having moderate to severe carpal tunnel syndrome on her left hand and moderate carpal tunnel syndrome on her right hand, Plaintiff's bilateral wrist was "no more than mild to moderate severity." (AR 21, citing AR 262-310.) Plaintiff also had "essentially normal range of motion of both wrists and both hands" and normal strength in both hands. (AR 22, citing AR 289, 300, 304, 306-08.) The ALJ did note that Plaintiff had decreased range of motion and limited strength in her left finger, and decreased left hand pinch strength, but reasoned that these abnormal findings did not suggest Plaintiff did not have the ability to make a fist, grab objects, or maintain grasp. (AR 21.)

As to Plaintiff's allegation that pain and stiffness in her shoulders affects her ability to reach in all directions, the ALJ noted that before April 2016, the records show that Plaintiff showed good range of motion and there was no evidence of

---

[5] The Court finds that the ALJ's error in finding Plaintiff was able to walk on heels without difficulty was harmless. *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (finding an error is harmless if it is "inconsequential to the ultimate nondisability determination"). Here, the ALJ offered other evidence contradicting Plaintiff's claims regarding her back. The ALJ explained that Plaintiff's gait remained intact, she was able to stand on her toes, and her range of motion, strength and flexibility had improved. (*See* AR 21.)

synovitis or impingement. (AR 22, citing AR 323-53, 387- 432.) Additionally, the

///

ALJ pointed to a September 2016 treatment note where Plaintiff reported that her right shoulder was better. (AR 22; *see* AR 393.)

Similarly, the ALJ found Plaintiff's claim that she was significantly limited in her ability to walk due to the pain and stiffness of her ankles and toes was inconsistent with treatment notes prior to August 2017. (AR 22.) The ALJ reasoned that Plaintiff's ankles and toes did not have synovitis, she had an intact gait, and was able to stand on her toes and walk on her heels without difficulty. (*Id.*, citing AR 323-53, 376, 387- 432.) As discussed above the record shows that Plaintiff had difficulty walking on her heels. (*See* AR 376.)

Finally, the ALJ reasoned that Plaintiff attempted to minimize her daily activities. (AR 22.) For example, the ALJ noted that while Plaintiff stated that she is unable to exercise or take her dog for a walk, Plaintiff reported walking and using a treadmill for exercise. (AR 22, citing AR 397.)

Plaintiff contends that the ALJ used boilerplate language to diminish her complaints and failed to identify evidence that contradicts or diminished those complaints. (JS 10, 12.) Additionally, Plaintiff argues that the ALJ failed to identify contradictory evidence related to Plaintiff's right upper extremity. (JS 16.) Plaintiff maintains that her statements are consistent with the evidence. (*Id.*)

Here, the ALJ identified specific medical records which contradicted Plaintiff's subjective allegations. (*See* AR 21-22.) While Plaintiff alleges that the ALJ did not identify contradictory evidence related to Plaintiff's right upper extremity (JS 16), the ALJ relied on Plaintiff's self-reported improvement of her right shoulder (AR 23). (*See* AR 393.) "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.1995); *see Parra v. Astrue*, 481 F.3d 742, 750

(9th Cir. 2007) (finding inconsistencies between claimant's testimony and medical record is a proper ground to discredit claimant's testimony); *see also Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012) (holding that ALJ properly found claimant was not credible where claimant's allegations were inconsistent with other medical evidence in the record).

Accordingly, the ALJ's finding that Plaintiff's statements were not consistent with the medical record constitutes a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

*b. Reason No. 2: Lack of Supporting Objective Medical Evidence*

The lack of supporting objective medical evidence cannot form the sole basis for discounting testimony, but it is a factor that the ALJ may consider in making a credibility determination. *Burch*, 400 F.3d at 681; *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (citing 20 C.F.R. § 404.1529(c)(2)).

Plaintiff contends that her statements are supported by the objective evidence. (JS 16.) Plaintiff argues that the ALJ ignored "the findings from physical examinations noted by the Plaintiff's orthopedist and rheumatologist." (JS 10.) Additionally, Plaintiff cites to evidence in the record which she contends supports a finding of disability prior to August 11, 2017. (*See* JS 10-11.)

The ALJ found that the positive objective and clinical diagnostic findings since the AOD did not support a more restrictive RFC. (AR 23.) The ALJ reasoned that the medical evidence regarding Plaintiff's bilateral carpal tunnel syndrome, rheumatoid arthritis in the wrists, and degenerative disc disease of the lumbar spine supported the assessed RFC. (*Id.*)

Specifically, the ALJ reasoned that, while the evidence showed that Plaintiff experienced bilateral wrist and hand pain from carpal tunnel and rheumatoid arthritis, "the objective findings of [Plaintiff's] hands and wrists since the [AOD] do not support greater lifting, carrying, handling, or fingering limitations." (AR 23.) On her AOD, Plaintiff underwent surgery on her right wrist for extensor tenosynovitis.

(*Id.*, citing AR 309; *see* AR 171-72.) In April 2014, Plaintiff presented with left hand numbness. (AR 266.) A physical examination showed there was no edema and Plaintiff's left wrist had normal strength. (AR 23, citing AR 267-68, 271-72.) However, the ALJ noted that Plaintiff's Phalen's test, median nerve compression test, and Tinel's sign were positive, suggesting carpal tunnel syndrome. (*Id.*) On May 9, 2014, diagnostic testing confirmed that Plaintiff had severe left carpal tunnel syndrome and moderate right carpal tunnel syndrome. (AR 23, citing AR 306-08.) On July 10, 2014, Plaintiff reported right wrist pain, but her physician noted that there was "marked improvement." (AR 273.) The ALJ noted that Plaintiff still had "some limited range of motion and strength of her right wrist." (AR 23, citing AR 273, 275.) Additionally, the ALJ noted that the records showed a change in the character of Plaintiff's right wrist pain. (AR 23, citing AR 279.) In September 2014, Plaintiff's left carpal tunnel syndrome was noted to be worsening, but Plaintiff had a normal range of motion, no deformity or edema, and normal left upper extremity strength. (AR 23, citing AR 281.) Plaintiff showed decreased left pinch strength in January 2015. (AR 23, citing AR 289.) Plaintiff's right wrist pain remained stable until April 2015 when inflammatory arthritis began affecting her right hand. (AR 23, citing AR 287, 293.) However, the ALJ also pointed to a September 2015 treatment note documenting that her right wrist pain was stable and occasionally mild, and her left wrist pain had a mild severity level. (AR 23, citing AR 294.) The ALJ noted that by October 2015 Plaintiff's bilateral carpal tunnel syndrome had slightly improved, but Plaintiff had rheumatoid arthritis symptoms. (AR 23, citing AR 301.)

Similarly, the ALJ found that the objective findings did not support Plaintiff's claims of significant limitation to her ability to sit, stand, or walk. (AR 24; *see* AR 23-24.) The ALJ noted that on December 29, 2014, a lumbar spine magnetic resonance imaging scan showed Plaintiff had disc herniation at L3-L4, L4-L5, and L5-S1 (AR 312, 318-19), and a physical examination showed Plaintiff had a positive straight right leg raise, bilateral loss of pinprick sensation at L5 and bilateral

weakness to dorsiflexion of her great toe (AR 376-77). (AR 23.) Nevertheless, the ALJ relied on Plaintiff's ability to stand on her toes and walk on her heels without difficulty.[6] (*Id.*, citing AR 376.) The ALJ also relied on Plaintiff's improved range of motion, strength, and flexibility with physical therapy. (AR 23, citing AR 312.) The ALJ noted that Plaintiff continued to report pain and presented reduced range of motion (AR 312), but the ALJ relied on the fact that Plaintiff had intact sensation and symmetric reflexes (AR 373). (AR 24.)

Plaintiff contends that the ALJ "ignored" the findings from her orthopedist and rheumatologist. (JS 10-11.) Plaintiff cites to multiple treatment records from her physicians. (JS 10-11.) However, an ALJ is "not required to discuss every piece of evidence" in making a disability determination. *Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) (quoting *Howard v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003)). Notably, the ALJ did discuss some of the treatment records that Plaintiff contends the ALJ ignored, (*see* AR 22-23; *see also* JS 11, citing AR 376-77), which suggests that the ALJ reviewed the record in its entirety and made a decision based upon consideration of all the evidence. Additionally, Plaintiff has not shown that the evidence she cites is significant or probative. *See Howard*, 341 F.3d at 1012 ("ALJ is not required to discuss evidence that is neither significant nor probative").

The Court finds that the ALJ thoroughly considered Plaintiff's medical records (*see* AR 20-24) and found that the objective medical evidence did not support Plaintiff's allegations of disabling symptoms and limitations (*see* AR 24). *See Reddick*, 157 F.3d at 725. Throughout the decision the ALJ relies on medical records documenting normal examination results, which the ALJ was allowed to rely on in assessing Plaintiff's testimony. *See Garza v. Astrue*, 380 F. App'x 672, 674 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's normal exam findings

---

[6] The Court finds that the ALJ's erroneous summary of Plaintiff's ability to walk on her heel is harmless, because the ALJ offered other evidence to support the finding that there is a lack of objective evidence to support Plaintiff's claims. *See Stout*, 454 F.3d at 1055.

when noting a lack of objective medical evidence to support the claimant's allegations); *see also Margolis v. Berryhill*, No. CV 17-5047 SS, 2018 WL 3129775, at *10 (C.D. Cal. June 22, 2018) (holding that ALJ may rely on normal and unremarkable examinations in discounting a claimant's subjective testimony).

Additionally, the ALJ was allowed to rely on examination notes and reports showing Plaintiff's improved condition. *See De Herrera v. Astrue*, 372 F. App'x 771, 774 (9th Cir. 2010) (finding that an ALJ properly considered a claimant's improved condition with treatment in discounting a claimant's complaints of debilitating pain); *Huntsman v. Colvin*, No. EDCV 13-1300 JC, 2014 WL 808020, at *9 (C.D. Cal. Feb. 28, 2014) (holding that ALJ may rely on medical records reflecting improvement over time and refusing to "second guess the ALJ's reasonable interpretation of this medical evidence which is supported by substantial evidence in the record.").

While there may be other evidence in the records which document Plaintiff's medical problems, the ALJ was allowed to weigh the multiple normal examination results and documented improvement in evaluating Plaintiff's testimony. Where, as here, the evidence might be susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *See Ryan*, 528 F.3d at 1198 (citing *Burch*, 400 F.3d at 679); *see Robbins*, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").

Accordingly, the ALJ's finding that Plaintiff's statements are not supported by the objective medical evidence constitutes a specific, clear and convincing reason for discounting Plaintiff's subjective symptom testimony.

**5. Conclusion**

The Court finds that the ALJ gave specific and clear and convincing reasons for discounting Plaintiff's subjective symptom testimony. *See Stobie v. Berryhill*, 690 F. App'x 910, 911 (9th Cir. 2017) (finding ALJ properly rejected claimant's

testimony where ALJ found there was insufficient objective medical evidence to

///

establish disability and claimant's testimony conflicted with the objective medical evidence). As such, the ALJ properly evaluated Plaintiff's subjective complaints.

**B. <u>The ALJ Did Not Err in Assessing Plaintiff's RFC</u>**

The ALJ is responsible for assessing a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3), 404.1546(c); *see Robbins*, 466 F.3d at 883 (citing SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996)). In doing so, the ALJ may consider any statements provided by medical sources, including statements that are not based on formal medical examinations. *See* 20 C.F.R. § 404.1513(a), 404.1545(a)(3). An ALJ's determination of a claimant's RFC must be affirmed "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *accord Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

In determining Plaintiff's RFC, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . [and] also considered opinion evidence" in accordance with social security regulations. (AR 20.)

Plaintiff contends that the evidence supports greater limitations related to her right hand prior to August 11, 2017. (JS 5; *see* JS 4-6.) Plaintiff cites to treatment notes documenting Plaintiff's rheumatoid arthritis, inflammatory polyarthritis, and carpal tunnel syndrome. (*See* JS 4-6.) Plaintiff cites to treatment notes documenting tenderness, weakness, and swelling. (JS 5, citing AR 265, 270, 272-79, 283, 285, 292, 391, 393, 395-99.) Plaintiff argues that the ALJ "could only identify one medical note from July 10, 2014, in which her doctor noted that she had marked improvement," but ignored the rest of the note which stated that Plaintiff's pain was aggravated by bending, lifting, and movement. (JS 6.) Plaintiff contends that the

ALJ cherry-picked portions of the record. (JS 9.)

///

"While the ALJ has the primary responsibility for sorting through the medical evidence and assessing its weight, that does not allow an ALJ to ignore–or 'cherry-pick'–evidence to support a determination." *Gurtner v. Colvin*, No. ED CV 15-156 MRW, 2015 WL 5267061, at *4 (C.D. Cal. Sept. 9, 2015); *see Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) ("treatment records must be viewed in light of the overall diagnostic record"). As discussed above in connection with Plaintiff's subjective complaints, the ALJ thoroughly reviewed the medical records presented by Plaintiff. While Plaintiff points to some evidence that the ALJ did not discuss, the ALJ was not required to discuss every piece of evidence. *See Hiler*, 687 F.3d at 1212 (holding ALJ is "not required to discuss every piece of evidence"); *Lusardi v. Astrue*, 350 F. App'x 169, 173 (9th Cir. 2009). In discussing Plaintiff's improvement, the ALJ did not solely rely on one treatment note, but also cited to an October 2015 treatment note documenting slight improvement in Plaintiff's bilateral carpal tunnel syndrome. (AR 23; *see* AR 301.) While the note also documents that Plaintiff's pain was aggravated by bending, lifting, and movement, it describes no functional limitations and does not contradict the ALJ's RFC assessment of frequent handling and fingering with her right hand. *See Howard*, 341 F.3d at 1012 ("ALJ is not required to discuss evidence that is neither significant nor probative"). Additionally, where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *See Ryan*, 528 F.3d at 1198.

Second, Plaintiff contends that the ALJ "arbitrarily selected August 11, 2017 as the date . . . Plaintiff became disabled" and did not "provide a reasonable explanation why Plaintiff has greater restrictions to her right dominant hand." (JS 4, 6.) Plaintiff fails to cite to any case law or statutory authorities in support of her

arguments.[7] The Commissioner contends that the "ALJ made a reasonable inference that Plaintiff's condition worsened in August 2017." (JS 7.) The Commissioner argues that in compliance with the social security regulations,[8] "the ALJ referenced both the 'longitudinal history and treatment course . . . and any statements by the claimant about new or worsening signs.'" (JS 8.) While the Commissioner argues that the ALJ was not required to call a medical advisor to determine the disability onset date (*see* JS 7), Plaintiff does not contend that the ALJ was required to call a medical expert (*see* JS 4-6, 9).

"The requirement that, in all but the most plain cases, a medical advisor be consulted prior to inferring an onset date is merely a variation on the most pervasive theme in administrative law—that substantial evidence support an agency's decisions." *Wellington v. Berryhill*, 878 F.3d 867, 874 (9th Cir. 2017) (quoting *Bailey v. Chater*, 68 F.3d 75, 80 (4th Cir. 1995)). Here, in finding that Plaintiff had greater limitations beginning August 11, 2017, the ALJ relied on an August 11, 2017 progress note documenting that Plaintiff's condition was "significantly worse" and the disease had spread to Plaintiff's ankles and toes. (AR 24, citing AR 391.) The

---

[7] The Court reviews "only issues which are argued specifically and distinctly." *Greenwood v. F.A.A.*, 28 F.3d 971, 977 (9th Cir. 1994); *see United States v. Graf*, 610 F.3d 1148, 1166 (9th Cir. 2010) ("Arguments made in passing and not supported by citations to the record or to case authority are generally deemed waived"); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1036 (C.D. Cal. 2018) ("The Court's role is not to make or develop arguments on behalf of the parties, and . . . failure to present cogent arguments is enough to deny these objections"). While Plaintiff must make her own arguments for reversal, the Court has a duty to undergo a "full review of the facts" and make "an independent determination as to whether the [ALJ's] findings are supported by substantial evidence." *Stone v. Heckler*, 761 F.2d 530, 532 (9th Cir. 1985.). Thus, the Court reviews whether the ALJ properly determined Plaintiff's disability onset date.

[8] The Commissioner relies on SSR 18-1p. (*See* JS 7-8.) However, SSR 18-1p is applicable to applications filed on or after October 2, 2018. *See* SSR 18-1p, 83 Fed. Reg. 191 p. 49613. This case would instead be governed by SSR 83-20, 1983 WL 31249 (Jan. 1, 1983).

ALJ reasoned that "the progression of [Plaintiff's] rheumatoid arthritis of the wrists and fingers supports additional manipulative limitations." (AR 24.) The ALJ also noted progression of Plaintiff's rheumatoid arthritis to her ankles and toes. (*Id.*, citing AR 391, 399.) Additionally, the ALJ pointed to a physical examination documenting bilateral tender synovitis in Plaintiff's ankles, bilateral metatarsophalangeal joint boggy and tender synovitis in her toes, and a limited gait secondary to ankle and metatarsophalangeal joint pain. (AR 24, citing AR 387, 389, 391, 480.) The ALJ also pointed to records documenting Plaintiff's ability to stand and walk as being "quite limited." (AR 24, citing AR 392.) The Court finds that the ALJ's finding that Plaintiff's right hand had greater functional limitations beginning August 11, 2017, is supported by substantial evidence. *See Lopez v. Astrue*, No. 1:08-CV-01542-SMS, 2010 WL 1328888, at *13 (E.D. Cal. Apr. 2, 2010) (finding ALJ did not arbitrarily select an onset date where the ALJ "reviewed the medical evidence as a whole and determined the consistency of the various expert opinions with the overall record"). Accordingly, the Court finds that the ALJ did not err in assessing Plaintiff's RFC.

## V. CONCLUSION

IT IS ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: July 10, 2020

Rozella A. Oliver

ROZELLA A. OLIVER
UNITED STATES MAGISTRATE JUDGE

**NOTICE**

**THIS DECISION IS NOT INTENDED FOR PUBLICATION IN WESTLAW, LEXIS/NEXIS, OR ANY OTHER LEGAL DATABASE.**